OPINION OF THE COURT
Edward F. McLaughlin, J.
This CPLR article 78 proceeding in the nature of mandamus was commenced by notice of motion and supporting petition dated February 4, 1982 for judicial review of an administrative determination by respondent Flacke limiting the scope of the environmental impact statement to be prepared by Oneida County relative to the construction of a solid waste disposal plant.
By notice of cross motion dated March 19, 1982 respondent Flacke has requested that the petition be dismissed *991 for failure to state a cause of action (CPLR 3211, subd [a], par 7; 7804, subd [f]).
By notice of motion dated March 16, 1982 the County of Oneida has moved pursuant to CPLR 401 and 1003 for leave to be joined as a party respondent in this proceeding.
The named individual petitioners are real property owners who reside in the vicinity of the location chosen by the County of Oneida for the construction and operation of a solid waste disposal plant. Petitioner Rome-Floyd Residents Association, Inc., of which the individual petitioners are members, is a not-for-profit corporation created to promote the privileges and interests of the residents of the City of Rome and Town of Floyd, Oneida County.
The proposed waste disposal project, submitted by Oneida County in 1977, is to be located in the vicinity of Griffiss Air Force Base. Simply stated, municipal waste would be burned at the plant to generate steam, which would be sold to the base. The project was excluded from the requirement that an environmental impact statement (EIS) be prepared pursuant to subdivision 2 of section 8-0109 of the State Environmental Quality Review Act (ECL art 8; SEQRA), by virtue of its having been approved prior to November 1, 1978, the effective date of SEQRA for proposals of this type (see ECL 8-0111, subd 5, par [a]).
By letter dated December 20, 1980 petitioners commenced an administrative proceeding before the Commissioner of Environmental Conservation, requesting that the commissioner direct that an EIS be prepared pursuant to ECL 8-0111 (subd 5, par [a], cl [i]); i.e., that the project be “ungrandfathered”. By written decision dated October 16, 1981, respondent Flacke granted petitioners’ request in part, directed that an EIS be prepared, but limited the scope of the EIS to a discussion of the adverse environmental impacts raised by petitioners and to those mitigation measures raised by the petitioners and the county which were set forth in the text of the commissioner’s decision. The commissioner found that:
“Analysis indicates that the project as presently formulated has the potential for significant adverse environmental effects at or near the project site * * *
*992 “It should be noted that while RFRA has suggested the need to evaluate alternate sites for the proposed project, it has not offered any specific sites as reasonable alternatives. Given this lack of information on the part of RFRA coupled with the preliminary site work performed by the County over the past several years, it would be inappropriate to require analysis of alternative sites pursuant to SEQR ***
“It is clear that the possible adverse effects of the project as identified above should be thoroughly analyzed and mitigated in ways that will assure that a sound balance is ultimately reached among economic, social and environmental factors when government decisions are made in connection with this project. That substantial sums of money have thus far been expended in connection with the project is not questioned. In addition, I wish to acknowledge the good faith effort being conducted by the project’s sponsor with regard to a comprehensive review of environmental impacts associated with the proposal. While the expenditures to date may have narrowed the range of alternatives that may now reasonably be considered, they do not preclude the development of measures to mitigate potential impacts that may be associated with the project as presently formulated. It is apparent, therefore, that work on this particular project has not progressed to the point where necessary mitigation measures could not be practicably designed into the project at this time and incorporated into government reviews and future decisions in respect to it.”
Petitioners commenced this instant proceeding to challenge the commissioner’s decision to limit the scope of the EIS to mitigation of adverse environmental effects, thereby excusing any discussion of alternative sites.[1] Petitioners contend that the commissioner’s ruling is arbitrary, capricious, illegal and contrary to SEQRA in failing *993 to require that the EIS contain alternatives to the proposed action. Petitioners argue that neither the Environmental Conservation Law, specifically ECL 8-0111 (subd 5, par [a], cl [i]), nor the administrative rules and regulations promulgated pursuant to the statute, 6 NYCRR Part 617, authorize the commissioner to limit the scope of the environmental impact statement. It is contended that every environmental impact statement contain alternatives to the proposed action pursuant to ECL 8-0109 (subd 2, par [d]).
Certain preliminary procedural matters should be addressed before a discussion of the merits of petitioners’ application. Although petitioners contend the respondent’s motion to dismiss the proceeding was untimely, the court finds that the mailing of the motion to dismiss on March 19, 1982 did constitute timely service. (See CPLR 2103, subd [b], par 2; 7804, subd [c]; Matter of Waxman v Finn, Supreme Ct, Schenectady County, Dec. 17,1980, Shea, J.)
Turning to the cross motion of the County of Oneida for leave to intervene, the court notes that the county participated in the administrative proceeding below before the respondent Flacke which lead to the decision here under challenge. Indeed, the county is the project sponsor, and as such has the responsibility to prepare any required environmental impact statement, and has ultimate financial, administrative and operational responsibility for the project. It is clear that the County of Oneida has a beneficial interest in the controversy, and it appears that intervention by the county will not unduly delay the determination of the proceeding or prejudice the substantial rights of any party. Therefore, the motion to intervene by the County of Oneida is granted.
The sole issue raised by the petition in this proceeding is whether or not the Commissioner of Environmental Conservation, in his discretion, may limit the scope of an environmental impact statement which has been directed to be prepared pursuant to ECL 8-0111 (subd 5, par [a], cl [i]). The pertinent statutory sections read as follows:
*994 “§ 8-0109. Preparation of environmental impact statement
“1. Agencies shall use all practicable means to realize the policies and goals set forth in this article, and shall act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects, including effects revealed in the environmental impact statement process.
“2. All agencies (or applicant as hereinafter provided) shall prepare, or cause to be prepared by contract or otherwise an environmental impact statement on action they propose or approve which may have a significant effect on the environment. Such a statement shall include a detailed statement setting forth the following:
“(a) a description of the proposed action and its environmental setting;
“(b) the environmental impact of the proposed action including short-term and long-term effects;
“(c) any adverse environmental effects which cannot be avoided should the proposal be implemented;
“(d) alternatives to the proposed action;
“(e) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented;
“(f) mitigation measures proposed to minimize the environmental impact;
“(g) the growth-inducing aspects of the proposed action, where applicable and significant;
“(h) effects of the proposed action on the use and conservation of energy resources, where applicable and significant; and
“(i) such other information consistent with the purposes of this article as may be prescribed in guidelines issued by the commissioner pursuant to section 8-0113 of this chapter * * *
“The purpose of an environmental impact statement is to provide detailed information about the effect which a proposed action is likely to have on the environment, to list *995 ways in which any adverse effects of such an action might be minimized, and to suggest alternatives to such an action so as to form the basis for a decision whether or not to undertake or approve such action * * *
“4. * * * If the agency determines that such statement is required, the agency or the applicant at its option shall prepare or cause to be prepared a draft environmental impact statement. If the applicant does not exercise the option to prepare such statement, the agency shall prepare it, cause it to be prepared, or terminate its review of the proposed action. Such statement shall describe the proposed action and reasonable alternatives to the action, and briefly discuss, on the basis of information then available, the remaining items required to be submitted by subdivision two of this section.”
In substance, petitioners contend that the statute mandates that every environmental impact statement consider alternatives to the proposed action. In response, the respondents argue that the language and intent of ECL 8-0111 (subd 5, par [a], cl [i]) contemplates those circumstances in which it would be impractical to consider alternatives to the proposed action at the later stages of the project.
It is noted that the language of the “ungrandfathering” provision of ECL 8-0111 (subd 5, par [a], cl [i]) speaks in terms of the discretion of the commissioner to require the preparation of an EIS in cases where it is still practicable either to modify the action so as to mitigate potentially adverse environmental effects or to choose a feasible and less environmentally damaging alternative. In his decision of October 16,1981 the commissioner noted that the project was duly designated as an excluded action for the purposes of ECL article 8; that petitioners had not offered any specific sites as a reasonable alternative; that this lack of information on the part of petitioners, coupled with the preliminary site work performéd by the county over the past several years, would make it inappropriate to require analysis of alternative sites pursuant to SEQRA; that substantial amounts of money have thus far been expended in connection with the project; but that work on the project had not progressed to the point where necessary mitigation *996 measures could not be practicably designed into the project at this time. In essence, the commissioner found that, while it was not now practicable to choose a feasible and less environmentally damaging alternative, it was practicable to modify the action in such a way as to mitigate potentially adverse environmental effects. Such a finding is clearly contemplated and authorized by the statute. To insist that an EIS contain discussion of alternative sites in a case where discussion of alternatives has been found to be impracticable and unreasonable is contrary to both reason and the language, intent and purpose of SEQRA, and more particularly, ECL 8-0111 (subd 5, par [a], cl [i]).
As the statute expressly states, “[t]he purpose of an environmental impact statement is to provide detailed information about the effect which a proposed action is likely to have on the environment, to list ways in which any adverse effects of such an action might be minimized, and to suggest alternatives to such an action so as to form the basis for a decision whether or not to undertake or approve such action.” (ECL 8-0109, subd 2; emphasis added.) In the present case, the project, an excluded action under SEQRA, has already been undertaken and approved, and no alternate sites have been suggested or would be feasible at this stage of the project. Recognizing this fact, the commissioner sought to achieve the remaining policy goals of the act by directing preparation of an environmental impact statement limited to a discussion of the adverse environmental impacts raised by petitioners and mitigation measures that have been suggested to minimize the adverse effects of the project.
The administrative rules and regulations adopted pursuant to the statutory authority (6 NYCRR Part 617) further note that “[t]he basic purpose of SEQR is to incorporate the consideration of environmental factors into the existing planning, review and decision-making processes of State, regional and local government agencies at the earliest possible time” (6 NYCRR 617.1 [c]). “It was the intention of the Legislature that the protection and enhancement of the environment, human and community resources should be given appropriate weight with social and economic considerations in public policy, and that those factors be consid *997 ered together in reaching decisions on proposed activities. Accordingly, it is the intention of this Part that a suitable balance of social, economic and environmental factors be incorporated in the planning and decision-making processes of State, regional and local agencies. It is not the intention of SEQR that environmental factors be the sole consideration in decision making.” (6 NYCRR 617.1 [d]; ECL 8-0103, subd 7.) The determined yet realistic approach of the Legislature is further demonstrated, as quoted above, in ECL 8-0109 (subd 1; emphasis added): “Agencies shall use all practicable means to realize the policies and goals set forth in this article, and shall act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects, including effects revealed in the environmental impact statement process.”
In the opinion of this court, the decision of the Commissioner of Environmental Conservation was made in furtherance of and consistent with the statutory scheme.
Accordingly, respondents’ motion to dismiss the petition is granted.[2]

. On August 26, 1981 petitioners commenced an article 78 proceeding against the County of Oneida and Sherwood Boehlert, as County Executive, to invalidate the funding resolutions and contracts approved by the county for the construction of the plant, on the grounds that the respondents had failed to comply with the requirements of SEQRA. By decision dated March 11,1982 and order thereon dated March 16,1982 this court (O’Donnell, J.), dismissed the petition on the grounds that the above-described administrative proceeding before the Commissioner of Environmental Conservation was pending at the time of the commencement of the article 78 proceeding.

. Assuming for the purposes of this motion the truth of petitioners’ allegations, and giving them every favorable inference which can reasonably be drawn from these allegations, it is nevertheless apparent that no factual issues which would require a hearing have been raised in this proceeding, and that the sole issue here presented is a question of law which has been thoroughly presented and argued by the parties. The court may properly conclude, therefore, that this is solely a matter of statutory construction, and that petitioners have failed to state a cause of action upon which relief may be granted.